UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA PUGH,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | No.  2:20-cv-02255 WBS CKD (SS)<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability and disability insurance benefits under Title II of the Social Security Act ("Act").  For the reasons discussed below, the undersigned Magistrate Judge will recommend that plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.

BACKGROUND

Plaintiff, born in 1966, applied on January 6, 2017 for disability insurance benefits, alleging disability beginning October 17, 2016.  Administrative Transcript ("AT") 75, 85. Plaintiff alleged she was unable to work due to back pain, sciatic nerve damage, damaged vertebrae/lumbar, numbness in right foot and leg, fallen twice, broken left foot, plantar fasciitis, bone spurs in right leg, high blood pressure, and gastroesophageal reflux disease.  AT 39, 57,

182-184.  In a decision dated July 23, 2019, the ALJ determined that plaintiff was not disabled.[1]

AT 75-86.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.
>
> 2.  The claimant has not engaged in substantial gainful activity since October 17, 2016, the alleged onset date.
>
> 3. The claimant has the following severe impairments: degenerative disc disease, degenerative joint disease, obesity, diabetes mellitus, and obstructive sleep apnea.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

> 5. The claimant has the residual functional capacity to perform <u>light work</u> except: she could occasionally stoop and climb stairs; she is unable to kneel, crouch, or crawl; she must avoid hazards such as unprotected heights and dangerous moving machinery; and she is unable to work in temperature extremes or near vibrations.
>
> 6. The claimant is capable of performing past relevant work as a risk and insurance manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.[2]
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from October 17, 2016, through the date of this decision.

AT 77-85 (emphasis added).

Based on vocational expert (VE) testimony, the ALJ also found that, given plaintiff's age, education, work experience and RFC, she would be able to perform the requirements of representative occupations such as inspector/hand packager, small products assembler, and final inspector, all at the light exertional level. AT 85.

Plaintiff appealed the ALJ's decision to the Appeals Council (AC), which granted the request for review and issued the Agency's final decision on September 18, 2020. AT 4-7. The AC adopted the ALJ's "findings and conclusions regarding whether the claimant is disabled." AT 4. The AC further explained:

> The [AC] agrees with the [ALJ's] findings under steps 1, 2 and 3 of the sequential evaluation; namely, that the claimant has not engaged in substantial activity since October 17, 2016 and that the claimant has severe impairments, which do not meet or equal in severity an impairment in the Listings of Impairments. However, the [AC] does not agree with the [ALJ's] finding regarding the claimant's residual functional capacity.

AT 4. Rather, the AC found that plaintiff was limited to

> <u>sedentary work</u> except, she could lift and carry 10 pounds occasionally and frequently; stand and/or walk two hours in an eight-hour day; sit about six hours in an eight-hour day; occasionally stoop and climb stairs; she is unable to kneel, crouch, or crawl; she must avoid hazards such as unprotected heights and dangerous moving

---

[2] The ALJ noted that "[t]he claimant has past relevant work as a risk and insurance manager (DOT 186.117-066, sedentary exertion, SVP 8). AT 84. "At the hearing, . . . [t]he vocational expert testified that the claimant could perform her past relevant work as a risk and insurance manager." AT 85.

machinery; and she is unable to work in temperature extremes or near vibrations.

AT 4-5 (emphasis added). The AC's finding that plaintiff could perform sedentary work, rather than light work, was "supported by the opinions from State agency medical consultants S. Gerson, D.O. and Brian Harper, M.D., which were given great weight due to their consistency with the overall medical records." AT 5.

The AC affirmed the ALJ's conclusions regarding the medical opinion evidence and the evaluation of plaintiff's alleged symptoms for the reasons stated by the ALJ in his decision "with the exception of the evaluation of the State agency medical opinions of record." AT 5.

The AC affirmed the ALJ's conclusions "regarding the degree to which the claimant's mental impairment restricts the ability to understand, remember, or apply information; presents difficulties in interacting with others; results in deficiencies in concentration, persistence, or maintaining pace; and limits the ability to adapt or manage oneself." AT 5. Like the ALJ, the AC found that plaintiff's combination of impairments did not preclude the performance of past relevant work. AT 6.

The AC concluded that plaintiff was not disabled at any time through July 23, 2019, the date of the ALJ's decision. AT 6.

ISSUES PRESENTED

Plaintiff argues that the AC committed the following errors in finding plaintiff not disabled: (1) the AC erred in evaluating the opinion of plaintiff's treating physician; (2) the AC erred by not including mild mental limitations into the RFC; and (3) the AC failed to articulate the basis for its RFC finding.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Medical Opinion

Plaintiff argues that the AC erred in failing to give deference to the opinion of treating physician Dr. John Champlin, who evaluated plaintiff's functional capacities on June 10, 2019. AT 830-833. Specifically, plaintiff takes issue with the AC's failure to incorporate into the RFC Dr. Champlin's opinion that plaintiff would need hourly breaks from work and would be absent from work multiple times per week.

As with most of the medical opinion evidence, the AC adopted the ALJ's assessment of Dr. Champlin's opinion for the reasons stated in the ALJ's decision. AT 5. The ALJ summarized Dr. Champlin's opinion, stating in part:

> John Champlin, M.D., the claimant's provider at Med Center Medical Clinic, completed an opinion dated June 10, 2019 and stated that the claimant has presented with muscle spasms, decreased range of motion, decreased reflexes, and muscle pain. Dr. Champlin stated that the claimant has had some relief but little improvement in her

5

> activities of daily living.  Dr. Champlin stated that the claimant would be unable to go without taking medication while working full-time without concern for having side effects such as somnolence or lethargy.  Dr. Champlin opined that the claimant would need 10-minute breaks each hour and she would be absent three days a week if she attempted to work.  Dr. Champlin opined that the claimant. . . must lie down or rest for one hour per workday; . . . lying flat would provide more pain relief than positional changes; she is unable to sit for longer than 15 to 20 minutes at a time; and her pain radiates into or causes numbness or tingling in her legs.

AT 83, citing AT 830-833.

The ALJ gave some weight to Dr. Champlin's opinion "to the extent that it shows that the claimant is limited to sedentary exertional work." AT 83-84.  However, the ALJ found "little . . . objective evidence" that would support the opined limitations of a 10-minute break every hour and three work absences per month.  AT 84.  The ALJ found that these portions of Dr. Champlin's opinion were "not entirely consistent" with

> treatment notes that show that the claimant reported improved left foot pain following surgery, she reported that she was happy with her physical therapy after being given a good rehabilitation potential, and she has largely had control over diabetes.  Such evidence conflicts with [portions of] Dr. Champlin's opinion and the undersigned therefore gives little weight to his opinion of the claimant's need for unscheduled breaks and monthly absences from work.

AT 84; see AT 82 (summarizing evidence of medical improvement in 2016 and 2017 after foot surgery, improved footwear, aquatic therapy, treatment for sleep apnea, and "well controlled" diabetes).

For applications filed before March 27, 2017[3], the weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to

---

[3] For disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017).

considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831.

In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, Dr. Champlin's opinion as to plaintiff's need for frequent breaks and absences is contradicted by the opinions of State agency medical consultants Dr. Gerson and Dr. Harper, who reviewed plaintiff's medical history in 2017 (i.e., within the relevant period of alleged disability) and opined that she could perform sedentary work. AT 38-54, 56-70. Both the ALJ and AC gave these physicians' opinions great weight, with the ALJ reasoning that the opinions "provide for reasonable limitations when considering the claimant's diligence in seeking treatment" and objective medical findings as to her spinal and lower extremity degeneration, periods of difficulty controlling her diabetes, and obesity-related complications involving sleep apnea. AT 83.

The ALJ's decision to disregard those portions of Dr. Champlin's opinion apparently based on plaintiff's subjective statements is in keeping with his unchallenged credibility finding that plaintiff's "allegations are not entirely consistent with the record." AT 82; see AT 5 (AC adopts ALJ's "evaluation of the claimant's alleged symptoms" for reasons stated by the ALJ). Plaintiff has not shown that the AC and/or ALJ erred by discounting those of Dr. Champlin's

opined limitations that had little objective support in the medical record.

B. <u>Mental Limitations</u>

Plaintiff asserts that the AC erred by failing to incorporate plaintiff's mild mental limitations into the RFC.

The ALJ determined that plaintiff had mild mental limitations in four broad areas assessed pursuant to the psychiatric review technique (PRT), used to determine the severity of mental limitations at step two. <u>See</u> 20 C.F.R. § 404.1520a. The ALJ found plaintiff mildly limited in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. AT 79-79. However, after considering the evidence relating to mental impairment, the ALJ concluded:

> In light of . . . psychiatric examination findings throughout the treatment record, the claimant's response to medication, her reports of engaging in wide-ranging activities of daily living, and [three physicians'] medical opinions, the evidence shows that the claimant is cognitively, socially, attentively, and adaptively functional. The undersigned therefore finds that the claimant has only mild limitations . . . [that] do not satisfy the de minimis severity standards.

AT 79; <u>see</u> AT 78-79 (summarizing evidence and assessing credibility as to mental symptoms).

In its review of the decision, the AC "considered the effects of the claimant's mental impairment on her functional abilities" and "affirm[ed] the [ALJ's] conclusions regarding the degree to which the claimant's mental impairment restricts" her ability to function in the four PRT areas. AT 5. Like the ALJ, the AC included no mental limitations in the RFC. AT 6.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); <u>see also</u> <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of

8

work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Plaintiff argues that the AC was required to account for plaintiff's acknowledged mild mental limitations in the RFC, but there is scant legal support for that position. See Rania v. Kijakazi, No. 2:20-cv-01541 MCE CKD (SS), 2021 WL 5771663, *3 (E.D. Cal. Dec. 6, 2021) ("While the [applicable] regulations require the ALJ to consider the effect of all plaintiff's impairments in formulating the RFC, they do not require him to translate every non-severe impairment into a functional limitation in the RFC."), citing 20 C.F.R. § 404.1545(a)(2), findings and recommendations adopted by the district judge in 2022 WL 95228 (E.D. Cal. Jan. 7, 2022).

In Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008), the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Here, the ALJ gave great weight to the opinions of consultative psychologist Dr. Travis Owens and State agency reviewing mental health consultants Dr. Preston Davis and Dr. Winifred Ju, all of whom opined that plaintiff had no severe medically determinable mental impairment.[4] AT 79. The ALJ also noted that there was "little documentation of ongoing mental health-specific treatment" and that progress notes during the period of alleged disability reflected normal psychiatric examination findings.[5] AT 79.

Additionally, when assessing functional mental impairment, the ALJ considered plaintiff's "wide-ranging activities of daily living," including testimony that she was able to prepare meals, do household chores, drive and go out alone, go shopping, manage money, socialize with friends, pay attention up to 60 minutes at a time, was flexible as to changes in her routine, and could deal with workers who were performing renovations on her house and yard.[6] AT 78-79. The undersigned finds that the AC/ALJ considered the record as a whole and plaintiff's ability to meet the mental requirements of work in formulating the RFC, which was adequately explained and

---

[4] Citing AT 619-626, AT 38-54; AT 56-70.

[5] Citing AT 627-642; AT 676-705; AT 798-829.

[6] Citing AT 243-257; AT 622.

grounded in substantial evidence.

### C. Residual Functional Capacity

In a separate claim unrelated to mental impairment, plaintiff contends that the AC made significant legal errors in evaluating the RFC. Plaintiff argues that the AC "did not independently evaluate the evidence of record" but adopted the ALJ's RFC except for revising it from "light" to "sedentary" work. Plaintiff argues that the AC failed to explain how it arrived at the final RFC.

In its decision, the AC stated that it had "considered the entire record" and made its own findings on review. AT 6. The AC explained which of the ALJ's statements, findings, and conclusions it agreed with and why its decision diverged from the ALJ's in a few places. AT 4-7. In the only significant departure from the ALJ's decision, the AC assessed plaintiff's RFC as sedentary, then stated that "[t]hese functional limitations are supported by the opinions from State agency medical consultants S. Gerson, D.O. and Brian Harper, M.D., which were given great weight due to their consistency with the overall medical records." AT 5, citing AT 38-54, 75-86.

Though both physicians opined that plaintiff could perform sedentary work, the ALJ assessed plaintiff's RFC as light. AT 80, 83. The AC simply brought the RFC into conformity with Dr. Gerson's and Dr. Harper's opinions, making clear that the revision was based on crediting these medical opinions. Contra plaintiff's argument, there is no great mystery as to why the AC changed the RFC or what evidence it was based on. At any rate, because the AC concluded that plaintiff's RFC was more limited than the ALJ's RFC, it is not clear how any such error in the final Agency decision would be harmful to plaintiff. Based on the AC's reasoning and those portions of the ALJ decision it adopted, the final assessed RFC is sufficiently explained and grounded in substantial evidence.[7]

---

[7] In her motion for summary judgment, plaintiff asserts a fourth argument: The Agency decision denying her disability claim was constitutionally defective because § 902(a)(3) of the Social Security Act violates the separation of powers. The parties agree this provision violates the separation of powers to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause. See ECF No. 22 at 17. Plaintiff argues that the "constitutionally invalid" structure of the SSA entitles her to remand, but defendant points out that courts have rejected such reasoning; plaintiffs must show that an unconstitutional statutory removal restriction actually caused them harm. See Collins v. Yellen, 141 S. Ct. 1761, 1787-89 (2021). In her reply, plaintiff does not attempt to show actual harm and drops the argument.

Based on the foregoing, plaintiff has not shown reversible error on any claim, and defendant is entitled to summary judgment.

CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 19) be denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 22) be granted; and

3. Judgment be entered for the Commissioner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 1, 2022

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/pugh2255.ssi.ckd_f&rs